UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SMA PORTFOLIO OWNER, LLC,
as successor to Bank of America, N.A.,

    Plaintiff,

v.                                                        CASE NO.: 8:11-cv-1925-T-23EAJ

CPX TAMPA GATEWAY OPAG,
LLC, et al.,

    Defendants.
_____/

**ORDER**

Bank of America lent money to three subsidiaries of Corporex. The subsidiaries – CPX Tampa, CPX Madison, and CPX Olympic – defaulted. In Kentucky, the Bank sued Corporex and two of the three subsidiaries. Later, the Bank sued Corporex and CPX Tampa in the present action in Florida. SMA acquired the Bank's interest in the loan, and CPX Tampa asserted a compulsory counterclaim against the Bank. SMA and CPX Tampa settled the plaintiff's claim and left pending in the Florida action only CPX Tampa's counterclaim against the Bank. Positioned as the only plaintiff in this action, CPX Tampa moves under 28 U.S.C. § 1404(a) to transfer venue to Kentucky. CPX Tampa demonstrates that a transfer of the action to Kentucky will ensure legal and factual consistency with the Kentucky cases and

will permit one judge to economically supervise and consistently resolve these legally similar and factually insinuated cases, that is, a transfer will serve the interest of justice, and – especially in the instance of a trial in each action – the convenience of the parties and witnesses.

**BACKGROUND**

On June 30, 2011, in the Southern District of Ohio, the Bank sued (Doc. 1, Case No. 1:11-cv-440-DB) Corporex to enforce the guaranty on three CPX loans – the Bank's loans to CPX Tampa, CPX Madison, and CPX Olympic. On August 23, 2011, before Judge David L. Bunning in the Eastern District of Kentucky, the Bank initiated (Doc. 1, Case No. 2:11-cv-168-DLB-JGW; Doc. 1, Case No. 2:11-cv-169-DLB-JGW) separate foreclosure actions against CPX Madison and CPX Olympic.

On August 24, 2011, the Bank initiated (Doc. 1) the present action, a foreclosure action in the Middle District of Florida against CPX Tampa and Corporex. On September 27, 2011, SMA purchased the CPX Tampa loan from the Bank; a November 1, 2011 order (Doc. 16) substitutes SMA for the Bank as the plaintiff in this action. On January 26, 2012, the Southern District of Ohio transferred (Doc. 45, Case No. 1:11-cv-440-DB) to Judge Bunning the Bank's guaranty action against Corporex.

CPX Madison and CPX Olympic each counterclaim (Doc. 16, Case No. 2:11-cv-168-DLB-JGW; Doc. 18, Case No. 2:11-cv-169-DLB-JGW) against the Bank in

the Kentucky foreclosure actions. Also, CPX Madison and CPX Olympic jointly intervene (Doc. 6, Case No. 2:12-cv-23-DLB-JGW) and counterclaim (Doc. 85, Case 2:12-cv-23-DLB-JGW) against the Bank in the Kentucky guaranty action. In the present action, CPX Tampa counterclaims (Doc. 38) against the Bank.

Because a May 22, 2014 order (Doc. 259) dismisses with prejudice SMA's foreclosure claim against CPX Tampa and Corporex, the only claim remaining in this action is CPX Tampa's counterclaim against the Bank. CPX Tampa moves (Doc. 263) to transfer the action to the Eastern District of Kentucky.

**DISCUSSION**

"For the convenience of parties and witnesses [and] in the interest of justice," 28 U.S.C. § 1404(a) allows the transfer of any civil action "to any other district or division where it might have been brought."

*1. Forum Selection Clause*

CPX Tampa argues that this "action could have been brought in the Eastern District of Kentucky because diversity of citizenship exists between the parties, the amount in controversy exceeds $75,000, venue would be proper in the Eastern District, and personal jurisdiction exists over [the Bank] in Kentucky." (Doc. 263 at 5) The Bank responds that the loan agreement contained a "valid and enforceable forum selection clause . . . which dictated that all actions be brought in . . . Ohio." (Doc. 265 at 11)

The loan agreement states:

> 10. **Consent to Jurisdiction. TO INDUCE LENDER TO ACCEPT THIS NOTE, BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN CINCINNATI, OHIO. . . .**

(Doc. 1-2 at 13) In the counterclaim, CPX Tampa asserts three counts[1] that either "arise out of or relate to" the loan agreement.

By choosing to sue CPX Tampa in the Middle District of Florida, the Bank emphatically exercised the right to choose a venue and did so by electing to sue in Florida, not Ohio. The Bank's election compelled CPX Tampa to counterclaim in Florida. By electing to sue in Florida and by forcing CPX Tampa to counterclaim in Florida, the Bank waived the contractual right to require CPX Tampa to sue in Ohio.

In other words, by suing in Florida in an action "arising out of or related to" the loan agreement, the Bank exercised the contractual "sole and absolute" right to choose a forum. In choosing a forum other than Ohio, the Bank abandoned and waived the right in this action to elect an Ohio forum. Even now, attempting to maintain venue in Florida, the Bank incongruously raises a clause containing a contractual right to venue in Ohio (which might present a more palatable demand

---

[1] The October 5, 2012 order (Doc. 57) dismisses Count III and retains Counts I, II, and IV of the amended counterclaim (Doc. 38) – (1) that the Bank breached an implied duty of good faith and fair dealing (Count I), (2) that the doctrine of promissory estoppel requires the Bank to pay reliance damages to CPX Tampa (Count II), and (3) that the Bank breached the loan agreement by denying CPX Tampa the right of first refusal (Count IV).

- 4 -

from the Bank). Nullified by the Bank's election to sue in Florida, the forum selection clause in the loan agreement retains no influence in the decision to transfer the present action. Past actions – yes. Future actions – maybe. This action – no.

*2. Interest of Justice and Convenience of Parties and Witnesses*

Although Section 1404(a) lists only the convenience of the parties, the convenience of the witnesses, and the interest of justice, the considerations that influence the decision to transfer include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see also* Wright & Miller, *Federal Practice and Procedure*, Vol. 15, § 3847 (4th ed. 2014) ("The three statutory factors . . . are broad generalities that take on a variety of meanings in the context of specific cases. . . . [E]ach case must turn on its particular facts, and the trial court must consider and balance all the relevant factors to determine whether the litigation would proceed more conveniently and whether the interests of justice would be better served by transfer to a different forum." (footnote omitted)).

*A. A Forum's Familiarity with the Governing Law*

CPX Tampa argues that the "Kentucky court would be appropriate to litigate these claims because some of the claims are governed by Kentucky law." (Doc. 263 at 9) The Bank responds that although the pre-negotiation letter agreement is governed by Kentucky law, "[the loan agreement] is governed by Ohio law." (Doc. 265 at 15) In sum, "the parties agree that the 'interpretation and enforcement' of the loan agreements are governed by Ohio law . . . [and] that the 'interpretation and enforcement' of the pre-negotiation letter agreement are governed by Kentucky law." (Doc. 267 at 14 n.8 (citation omitted))

However, in the Kentucky guaranty action, the parties "agreed that there is no material difference between Kentucky and Ohio law and did not object to the consideration of the laws of both states in adjudicating the pending motions." *Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 696 (E.D. Ky. 2012) (Bunning, J.). In denying in part the Bank's motion to dismiss CPX Tampa's counterclaim, an October 15, 2012 order (Doc. 57) wholly adopts *Corporex*, 875 F. Supp. 2d at 710. Therefore, both Kentucky and Ohio law contribute to resolving CPX Tampa's counterclaim. The Eastern District of Kentucky indisputably enjoy an advantage over the Middle District of Florida in deciding a claim based not on Florida law but on Kentucky and Ohio law. This factor favors transfer.

*B. The Plaintiff's Choice of Forum*

CPX Tampa argues that the "weight to be accorded the plaintiff's choice of [forum] has no weight now, because the Plaintiff, SMA, has settled its claim." (Doc. 263 at 9) The Bank responds that CPX Tampa "deliberately chose to bring and litigate its Counterclaims in Florida even though it could have done so in the [Kentucky guaranty action]." (Doc. 265 at 16)

As CPX Tampa argues, the plaintiff, SMA, dismissed (Doc. 259) with prejudice the claim against defendants CPX Tampa and Corporex. Only CPX Tampa's counterclaim against the Bank remains. The threshold question in analyzing the plaintiff's "choice of forum" factor is whether CPX Tampa had a meaningful "choice" in asserting the counterclaim in the Middle District of Florida.

By suing CPX Tampa in the Middle District of Florida, the Bank triggered CPX Tampa's compulsory counterclaim in this district. In contrast, CPX Tampa is not a party to the Bank's Kentucky guaranty action against Corporex. CPX Tampa never "chose" one forum over another when CPX Tampa pleaded a compulsory counterclaim. CPX Tampa's asserting a compulsory counterclaim in the Middle District of Florida cannot weigh against CPX Tampa's request to transfer the counterclaim after the parties settled the underlying claim. *See Cordis Corp. v. Siemens-Pacesetter, Inc.*, 682 F. Supp. 1200, 1203 (S.D. Fla. 1987) (Hoeveler, J.) ("[Although] a plaintiff seeking transfer of venue" is not required to "show a change of circumstances since the time [of] the original action," "[t]his is not to say that a court

should not consider the existence or absence of changed circumstances in deciding whether transfer of venue is appropriate under 28 U.S.C. § 1404."). CPX Tampa is entitled to some deference in choosing venue, especially when the counterclaim is compulsory (but, whether compulsory or permissive, when the plaintiff's claim vanishes). Therefore, this factor favors transfer.

*C. Trial Efficiency and the Interest of Justice*

CPX Tampa argues that "[t]here is already parallel litigation pending in the Eastern District of Kentucky." (Doc. 263 at 9) The Bank responds that "[t]his case is far more advanced, procedurally, than the Kentucky Actions." (Doc. 265 at 19) Also, the Bank responds that even if this order transfers the action, the "Counterclaims cannot be consolidated with the Kentucky Actions . . . [because the] CPX Tampa Loan Documents provide for a bench trial while the Guarantor Defendants' Counterclaims will likely be tried before a jury." (Doc. 265 at 19)

An October 5, 2012 order (Doc. 57) denying in part the Bank's motion to dismiss and a September 12, 2014 order (Doc. 267) denying the Bank's motion for summary judgment frequently and importantly defer to the Kentucky guaranty action. (*See, e.g.*, Doc. 57 at 1 ("A case before Judge David L. Bunning in the Eastern District of Kentucky . . . parallels this action.")) Further, the September 12, 2014 order (Doc. 267) determines that "the parties negotiated the extension of the three loans as a package deal." (Doc. 267 at 8 (citations omitted)) Two of CPX Tampa's three counts – that the Bank breached an implied duty of good faith and fair dealing

- 8 -

(Count I) and that promissory estoppel requires the Bank to pay reliance damages to CPX Tampa (Count II) – require analysis of the parties' negotiations. Already familiar with the three loans, the Eastern District of Kentucky has a decided advantage in resolving these two claims.

The Bank argues that "[t]his case is far more advanced, procedurally, than the Kentucky Actions" and that "this Court's rulings would have a persuasive impact." (Doc. 265 at 18-19) However, the present action involves only one of the three CPX loans; the actions before Judge Bunning involve all three CPX loans. (*See* Doc. 265 at 17 ("[T]he Florida action is much simpler and has fewer damages than the Kentucky Actions."))

The Bank concludes that "[w]ithout consolidation, there is no efficiency gained with a transfer." (Doc. 265 at 19) However, even assuming that CPX Tampa fails to consolidate the counterclaim with the Kentucky guaranty action, the transfer promotes trial efficiency. Because "the parties negotiated the extension of the three loans as a package deal" (Doc. 267 at 8 (citations omitted)), discussion of one loan necessarily implicates the others. Presenting all three loans before the same court minimizes the danger of "inconsistent outcomes." (Doc. 263 at 10) Further, the Eastern District of Kentucky is familiar with each party; although CPX Tampa is not a party in any of the Kentucky actions, the Bank sues Corporex to enforce the guaranty on the CPX Tampa loan. (Doc. 1 at 2, Case No. 2:12-cv-23-DLB-JGW) Also, factual overlaps exist; for example, the three CPX entities "signed nearly

*identical* pre-negotiation [letter] agreements." (Doc. 154 at 4) Even if CPX Tampa's counterclaim is not consolidated (or consolidated only for some purposes – for example, discovery or the resolution of dispositive motions or all purposes except trial) with the Kentucky guaranty action, the transfer will promote trial efficiency and the interest of justice. This factor favors transfer.

*D. Locus of Operative Facts*

CPX Tampa argues that "CPX Olympic and CPX Madison have asserted nearly identical claims against [the Bank] in the [Kentucky guaranty action] based upon the same nucleus of operative facts as the Tampa Action." (Doc. 263 at 3) The Bank responds that "this factor is neutral" because "CPX Tampa's claims [arise] out of a myriad of acts." (Doc. 265 at 14) The Bank offers four examples – "CPX Tampa is a Florida limited liability company, the property that is the subject of the Loan Documents is located in Florida, CPX Tampa and the Bank conducted at least one meeting in Chicago during the . . . negotiations[,] and Leslie Andren, one of the main Bank employees involved with the . . . negotiations, visited the Tampa property." (Doc. 265 at 14)

In choosing a "proper forum" in a breach of contract action, a district court must consider where the parties executed the contract and where the alleged breach of the contract occured. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137 (11th Cir. 2005). The parties executed the loan agreement in Kenton, Kentucky. (Doc. 1-2 at 19) The Bank allegedly breached its duty to negotiate in good faith

(Doc. 184 at 14) and "CPX Tampa and the Bank conducted at least one meeting in Chicago during the . . . negotiations" (Doc. 265 at 14). Neither party alleges where the Bank changed the exposure strategy from "decrease" to "out," a change allegedly breaching the contract. (*See* Doc. 267 at 3-4) Because the parties executed the underlying agreement in Kentucky, this factor favors transfer.

The remaining three of the four examples provided by the Bank affect only indifferently the issue of a convenient forum. First, CPX Tampa's place of incorporation is irrelevant to the counterclaim, which relies on (1) the loan agreement, governed by Ohio law; (2) the pre-negotiation letter agreement, governed by Kentucky law; and (3) the negotiations between CPX Tampa and the Bank. (Doc. 265 at 14-15) Second, the location of the property is irrelevant to the contract-based counterclaim. Although the location of the property pertains to SMA's foreclosure action, SMA dismissed (Doc. 259) the foreclosure action. Only the counterclaim remains. Finally, although Leslie Andren "visited the Tampa property," Andren "do[es] not reside in either Florida or Kentucky." (Doc. 265 at 14)

*E. Convenience of the Non-party Witnesses*

CPX Tampa argues that neither CPX Tampa's fact witnesses nor the Bank's fact and expert witnesses reside in Florida. (Doc. 263 at 4) CPX Tampa argues that six of CPX Tampa's and the Bank's "witnesses reside within the territorial subpoena power of the District Court where Judge Bunning presides." (Doc. 263 at 4)

- 11 -

The Bank responds that because "[t]hree of the six witnesses are employees of CPX-related entities and/or are corporate representatives for CPX Tampa including William P. Butler, Nicholas Heekin[,] and Thomas Banta," these three "should not be considered" "for the purposes of this factor." (Doc. 265 at 13)

The significance of this factor "is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (Wilson, J.); *accord Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (Moore, J.) ("[T]ransfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party.").

Of the six witnesses, William P. Butler and Nicholas Heekin are employees of Corporex. (Doc. 146 at 10; Doc. 150 at 17) "CPX Tampa is a wholly-owned subsidiary of Corporex Select Service Hotels, LLC, [and] Corporex Select Service Hotels is a wholly-owned subsidiary of Corporex Companies, LLC." (Doc. 146 at 18) Also, Thomas Banta is an "employee[] of CPX-related entities and/or [is a] corporate representative[] for CPX Tampa." (Doc. 265 at 13) Because CPX Tampa can obtain their presence, the three witnesses are not considered for the purposes of this factor.

Despite the flaw in CPX Tampa's argument, the transfer would promote the convenience of non-party witnesses. If the present action and the Kentucky guaranty action each go to trial, the significant overlap in each case will prompt many of the witnesses to testify in both Florida and Kentucky. Also, neither CPX Tampa's fact witnesses nor the Bank's fact and expert witnesses reside in Florida. (Doc. 263 at 4) This factor favors transfer.

*F. Ability to Compel Attendance of Unwilling Witnesses*

CPX Tampa argues that "unlike the Middle District of Florida, unwilling witnesses can be compelled to testify" in the Eastern District of Kentucky. (Doc. 263 at 9) The Bank responds that although "CPX Tampa identified . . . non-party witnesses outside of [the Middle District of Florida]'s subpoena power," CPX Tampa "did not affirmatively state that these witnesses would be unwilling to testify at trial." (Doc. 265 at 15)

Although CPX Tampa fails to indicate which witnesses are unwilling to testify, CPX Tampa lists three witnesses – Jennifer Roudebush, Joshua Barrick, and Robert Fessler – who "reside within the territorial subpoena power of the [Eastern District of Kentucky]." (Doc. 263 at 4) Each party fails to establish that any witness resides within the territorial subpoena power of the Middle District of Florida. On the limited briefing by each party, this factor favors transfer.

*G. Convenience of the Parties*

CPX Tampa argues that because "[t]here is already parallel litigation pending in the Eastern District of Kentucky," this factor "support[s] transferring the case to the Eastern District of Kentucky." (Doc. 263 at 9)  The Bank responds that "[t]ransferring the case simply because of CPX Tampa's preference or alleged convenience is not permissible." (Doc. 265 at 14)  Conflating the "convenience of the parties" factor with "convenience of the non-party witnesses" factor, the Bank argues that "[a]lthough the corporate representatives for CPX Tampa reside in Kentucky, the Bank's key witnesses . . . do not reside in either Florida or Kentucky." (Doc. 265 at 14)

The allegations in the motion to transfer (Doc. 263) and the response opposing the transfer (Doc. 265) fail to present a "clear difference in the convenience of witnesses and parties," *Underhill*, 119 F. Supp. 2d at 1319.  For example, the Bank never argues that transferring the action from Florida to Kentucky will inconvenience the Bank.  The Bank's "key witnesses" reside in neither Florida nor Kentucky. (Doc. 265 at 14)  Also, although three "employees of CPX-related entities and/or . . . corporate representatives of CPX Tampa" (Doc. 265 at 13) "reside within the territorial subpoena power of the [Eastern District of Kentucky]" (Doc. 263), neither party explains what weight these witnesses have in CPX Tampa's case.  This factor favors neither transfer nor retention.

*H. Relative Means of the Parties*

CPX Tampa argues that "[b]oth parties have equal means to litigate the case in Kentucky." (Doc. 263 at 9) Similarly, the Bank argues that "both parties have the means to litigate in Florida." (Doc. 265 at 15) This factor is neutral.

*I. Location of Relevant Documents and Relative Access to Proof*

"The parties' trial exhibits have already been exchanged in electronic format and each exhibit can be brought to trial with ease." (Doc. 265 at 14) This factor is neutral.

## CONCLUSION

The six factors favoring transfer distinctly outweigh any arguments favoring retention. CPX Tampa's motion (Doc. 263) to transfer is **GRANTED**. Bank of America's unopposed motion (Doc. 266) for leave to extend the seal is **GRANTED**. The September 5, 2013 seal (Doc. 134) is extended to September 5, 2015. This action is **TRANSFERRED** to the Eastern District of Kentucky. The clerk is directed to close the case.

ORDERED in Tampa, Florida, on September 22, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE